## UNION BUS TERMINAL v. FANNIE MENNEN.

Eastern Section.   February 2, 1932.

Petition for Certiorari denied by Supreme Court, June 4, 1932.

Thomas, Thomas & Coffey, of Chattanooga, for plaintiff in error.
M. B. Finkelstein, of Chattanooga, for defendant in error.

PORTRUM, J.   This is an action for damages for personal injuries instituted by Fannie Mennen against the Union Bus Terminal. The defendant operates a bus station, and plaintiff, intending to take a bus leaving therefrom for Nashville, was entering the station by one of the regular passageways or sidewalks, when she fell over a step constructed to graduate the passageway or sidewalk so as to conform to the natural incline of a runway used by the busses.

The negligence complained of in the declaration and denied under the defendant's plea of not guilty, is that the step was constructed defectively and insufficiently lighted. In the course of the plaintiff's proof the court held the step was constructed properly and safely, and excluded further proof on this point; confining the issue solely to the sufficiency of the lighting.

The jury returned a verdict for $2000 in favor of the plaintiff. Upon the consideration of the motion for a new trial the trial judge suggested a remittitur in the sum of $800, which was accepted by the plaintiff under protest and she prayed and has prosecuted an appeal from this holding. The defendant likewise has appealed and assigned error.

The issue of fact presented upon this appeal goes to the sufficiency of the lighting of the step. We are to determine if there be any evidence to take this issue to the jury.

It is quite difficult to picture adequately the premises by a verbal description; the photographs in the record make plain at a glance the condition, and situation, of the premises. We refer to them, for we propose to discuss the condition of the premises as shown by the pictures, without an elaborate verbal description of the premises. The pictures show the concrete walkway, three feet four inches wide, lying between the inner wall of the building and the runway of the busses. There are two windows and a doorway cut in the side of this wall and opening on the walkway. At the side of one of these windows a pilaster extends four inches into the sidewalk and abutting on the corner of this pilaster a step is constructed in the sidewalk. The pilaster shortens the width of the sidewalk at this point to three feet, and the step appears to be about eight inches in height. In the center of this pilaster, and about seven and one-half feet above the walkway is an electric light fixture placed there for the purpose of lighting the step. This light is not placed immediately over the step, but is placed about eighteen inches to the side of the

step. About three feet from the pilaster, and six feet away from the step, there is an off-set in the wall, of about four or five feet broadening the sidewalk to about eight feet which wide place is used as a platform for baggage and as an entrance to the waiting room. Over a wide entrance door in the center of this platform is a light of the same character as that described at the pilaster. The rays from this light over the door are deflected by the projected corner at the offset and the rays from this light at most cannot do more than shine upon the outside corner of the step, and this light has a tendency to obscure the step. There are two runways for the busses, and in the ceiling between the runways are placed two ceiling lights. These five lights illuminate the interior of the building. There was used in each of them two hundred watt globes, with the exception of the light on the pilaster, where a one hundred watt globe was used. These globes were enclosed in globular translucent shades, which diffuse the light. In the picture one bus stands on the runway passage next to the sidewalk, but at the time of the accident there were two busses on this runway and the second extended beyond the step and the pilaster so the light from the ceiling was obstructed at the place of the step, since the bus cast its shadow across the sidewalk, but if the light on the pilaster was sufficient its rays should have obliterated the bus' shadow. The light from the window did not obliterate the shadow of the bus upon the sidewalk as is seen by the photograph.

On June 4, 1930, plaintiff purchased a ticket to Nashville and entered the bus station for the purpose of boarding the bus at about ten o'clock in the forenoon. The sun was shining bright, and plaintiff admits that she may have been somewhat dazzled when she came in from the street, and the interior of the terminal was dark. She walked down this sidewalk looking down, but did not see the step because the passageway was dark, and as a result fell at the step and was injured. She states she did not notice the light burning at the pilaster. She was walking between the wall and the busses, and the light was seven and one-half feet from the floor. Counsel insists that there is evidence that this light on the pilaster was not burning at the time, and if so of course there is evidence to support the verdict, for under the then condition the step was lighted only by the light on the pilaster. There is no direct evidence that the light on the pilaster was not burning, the plaintiff's evidence upon this question is negative in character, while the defendant's evidence is positive. It is true the plaintiff says that the step was dark, it may have appeared dark, as we shall hereafter discuss, notwithstanding the light on the pilaster was burning.

One of plaintiff's witnesses testified that the light on the pilaster cast a shadow upon the step; a witness for the defendant testified

that the light cast a shadow, but that the light was so placed that this shadow intensified the illumination of the step. These statements are apparent contradiction of a law of physics, for the globe was translucent and its purpose was to diffuse the light. We think there was a shadow, but it was not caused by the light on the pilaster. The rays from the two hundred watt light over the door at the waiting room bisected the sidewalk from the corner at the offset to the corner of the step, and the less powerful rays from the light on the pilaster falling upon the step in contrast appeared to throw a shadow upon the step. Rays of light coming from the two hundred watt globes in the ceiling to the rear of the bus perhaps illuminated the sidewalk at the rear of the bus and threw an apparent shadow obscuring the step. This condition would not have existed had the light on the pilaster contained a two hundred watt globe. For the globe being of equal power the radiation from each would have left no line of demarcation (a high-powered light shining in a room through the door into a hallway lighted by smaller power light will demonstrate the existence of these lines of demarcation, and apparent shadow). There is proof that this is not adequate lighting under the then condition, and we think this conclusion of the witnesses is reasonable, in view of what we have stated in reference to the lights. Then there was evidence to support the verdict and this assignment of error must be overruled.

We do not think, as a matter of law, the plaintiff was guilty of contributory negligence barring her recovery, because she came in from the sunlight into the dark passageway and passed over it without allowing time for her eyes to accommodate their focus to the darkened condition of the room. It was a question for the jury to say what the ordinary prudent person would have done under like circumstances. And then, the defendant invited her into the passage way and this invitation carried with it an assurance that the premises were properly lighted.

Error is assigned because the judge refused to give this special request to the jury:

> "To determine the safety of the step and sufficiency of the lighting of it, you may consider, in determining this, the undisputed evidence that the step has long been successfully used by the defendant without prior accident."

Two other special requests contained the same thought and the disposition of the one disposes of the three. The trial judge permitted the defendant to prove that this station had been in operation for three and one-half years, and that hundreds of people used it daily and this was the first accident. Counsel in his argument to the jury had an opportunity to stress this line of evidence and convince the jury, if he could, that the step was properly lighted.

The judge will not be put in error for his failure to discuss the evidence in detail. He should not single out the high points in the evidence of the defense and particularize in his charge, for to do so he might give undue emphasis to a certain line of evidence.

But it is said by counsel: "By refusal of the foregoing three requests, defendant was greatly prejudiced, because the court had stated (bottom page 70, R.), in the presence of the jury that evidence of previous successful maintenance of steps without accident was immaterial and the foregoing requests were intended to rectify this misapprehension in the minds of the jurors."

There is no reference to this matter at page 70, but at page 90 this occurs:

"Mr. Finkelstein: Your Honor has ruled the act is immaterial.

"The Court: No.

"Mr. Coffey: If your Honor please, we have proof to show . . .

"The Court: I know, if the plaintiff wanted to show other accidents, the plaintiff could show them if not too remote. You are right about that."

It seems to us the court's ruling was favorable and not prejudicial to the defendant.

Error is assigned because the trial judge declined to require a remittitur of more than $800; and it is now insisted that a judgment of $1200 is excessive. It is true a majority of the injuries sustained in this accident were temporary, but there is an injury on the fleshy part of the arm which left a knot the size of an egg. This lump has remained for more than one year, and it is a cause of much anxiety to the plaintiff for the reason she anticipates that it may develop into a tumorous or cancerous growth. And this apprehension is not unfounded, for the physicians say that it might in fact develop into a tumorous growth. A condition of this kind may well prove more distressing than a permanent injury of a different character. The trial judge was in position to judge of this matter and we are content to abide by his decision.

The plaintiff appeals because the trial judge reduced her judgment from $2000 to $1200, but she failed to file a motion for a new trial in the lower court, or to assign error in this court, and for these reasons she is not entitled to a review of the questions here.

The judgment of the lower court is affirmed. Since both parties unsuccessfully prosecuted an appeal, the cost of the appeal will be divided equally between them.

Snodgrass and Thompson, JJ., concur.